# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-CR-0099-001-CVE |
| | ) |
| SLINT KENNETH TATE, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court are the following motions: Defendant Slint Tate's Motion to Suppress Evidence Derived from Pen Register (Dkt. # 106); Defendant Slint Tate's Motion in Limine (Dkt. # 107); Defendant Slint Tate's Motion for Disclosure of Co-Conspirator Statements (Dkt. # 109); Defendant Slint Tate's Motion for James Hearing (Dkt. # 110).

### I.

On September 6, 2017, a grand jury returned an indictment alleging that defendant and six others participated in a conspiracy to possess with intent to distribute and to distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine (count one). Dkt. # 2, at 2. In addition to the conspiracy charge alleged in count one, defendant is charged with four counts of distributing methamphetamine (counts two through five) and sixteen counts of using a communication facility in committing or facilitating a drug trafficking offense (counts 10 through 25). The conspiracy allegedly began in March 2015 and continued until September 2017. The indictment alleges that defendant directed a drug trafficking organization from the Oklahoma penitentiary located in McAlester, Oklahoma, where defendant allegedly used a cell phone to manage the operations of the organization. Id. at 3. Defendant allegedly directed persons outside

of the prison to sell methamphetamine, and defendant Robin Tracy Zumwalt allegedly stored illegal drugs, drug paraphernalia, proceeds of drug transactions, firearms, and other property for the drug trafficking organization. Id. at 5. Defendant engaged in discussions with Zumwalt and an unindicted coconspirator to obtain quantities of methamphetamine and marijuana for distribution in Oklahoma. Id. at 6.

On May 4, 2016, defendant allegedly ordered defendant Jeremy Dallas Mann to assault an unindicted coconspirator who defendant believed was jeopardizing the drug trafficking organization. Id. Defendant continued to direct drug trafficking operations until May 7, 2016, when law enforcement officers began to arrest members of the organization. Id. at 7. The indictment alleges that defendant Zumwalt and Mann began to conceal property used in furtherance of the conspiracy, and Zumwalt stored over $8,000, drug paraphernalia, a .22 caliber pistol, and a sawed off shotgun in her home. Id.

## II.

### A.

Defendant has filed two motions related to the government's use of coconspirator statements at trial. Defendant asks the Court to conduct a pretrial hearing to determine whether coconspirator statements will be admissible at trial. Dkt. # 110. He also asks the Court to compel the government to "disclose notice of every specific statement and its respective declarant" that the government intends to use at trial. Dkt. # 109, at 3. The government responds that a pretrial hearing to determine the admissibility of coconspirator statements is not required under Tenth Circuit precedent, and defendant has cited no authority that the government has any obligation to disclose what evidence it will present at trial. Dkt. ## 112, 113.

Under Fed. R. Evid. 801(d)(2)(E), a statement is not considered hearsay if the court finds that "(1) a conspiracy existed; (2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy; and (3) the statement was made in the course of and in furtherance of the conspiracy." United States v. Eads, 191 F.3d 1206, 1210 (10th Cir. 1999) (quoting United States v. Caro, 965 F.2d 1548, 1557 (10th Cir. 1992)). For Rule 801(d)(2)(E) to apply, the government must establish the existence of a conspiracy at some point in its case-in-chief, or the statements must be excluded. United States v. Kaatz, 705 F.2d 1237, 1244 (10th Cir. 1983). A court "can only admit coconspirator statements if it holds a *James* hearing [before trial] or conditions admission on forthcoming proof of a 'predicate conspiracy through trial testimony or other evidence.'" United States v. Townley, 472 F.3d 1267, 1273 (10th Cir. 2007) (quoting United States v. Owens, 70 F.3d 1118 (10th Cir. 1995)). A district court may rely on the statements and observations of other coconspirators to support its finding that a conspiracy existed. Owens, 70 F.3d at 1124-25. If a coconspirator statement is admissible under Fed. R. Evid. 801(d)(2)(E), the requirements of the Confrontation Clause of the Sixth Amendment are also satisfied. United States v. Molina, 75 F.3d 600, 603 (10th Cir. 1996).

The government opposes defendant's motion for a James hearing and argues that there is no Tenth Circuit precedent requiring a pretrial hearing to determine the admissibility of coconspirator statements. Dkt. # 113. The Tenth Circuit has stated that it has a "preference" for a district court to hold a pretrial hearing. United States v. Gonzalez-Montoya, 161 F.3d 643, 649 (10th Cir. 1998). However, the Tenth Circuit has clearly held that this is a preference only, and the district court retains discretion to hold a pretrial hearing or permit the government to "connect up" the statements to a conspiracy at trial. United States v. Urena, 27 F.3d 1487, 1491 (10th Cir. 1994). In this case,

the indictment alleges that numerous defendants engaged in a conspiracy to distribute methamphetamine, and a James hearing would take almost as long as a jury trial. The Court will require the government to lay a proper foundation for admitting coconspirator statements by offering proof of the conspiracy and each defendant's membership in it before seeking to admit the statements, but defendant's motion (Dkt. # 110) for a James hearing is denied.

Defendant also asks the Court to compel to the government to identify each coconspirator statement that it intends to use at trial. Dkt. # 109, at 1. The government states that it has disclosed all coconspirator statements to defendant, including statements from uncharged-coconspirators, but it argues that it has no obligation to specifically identify what statements it may use at trial. Dkt. # 112, at 1-2. The Court has reviewed defendant's motion and he cites no authority that government is required to make a pretrial disclosure of the evidence it intends to use at trial. Discovery in criminal cases is limited and the government is not ordinarily compelled to identify what evidence or witnesses will be presented at trial. See United States v. Nevels, 490 F.3d 800, 803-04 (10th Cir. 2007). Defendant does not dispute that coconspirator statements have been disclosed and that his attorney will be able to prepare for trial. However, he has not shown that the government is required to specifically identify what evidence it will use at trial, and his motion (Dkt. # 109) for pretrial disclosure of the coconspirator statements that the government will use at trial is denied.

**B.**

Defendant has filed a motion in limine (Dkt. # 107) seeking to exclude eight categories of evidence. The government opposes defendant's motion as to seven of the categories of evidence, but the government does not oppose defendant's request to exclude evidence of his prior criminal conviction for which he is currently incarcerated. Dkt. # 114, at 2. The Court will preliminarily

grant defendant's request to exclude evidence of his criminal conviction but, considering the nature of the case, the evidence could become admissible if defendant makes his prior conviction relevant at trial.

Evidence of Defendant's Status as a Prisoner

Defendant argues that evidence of his status as a prisoner should be excluded, because this evidence is not relevant to any of the charges alleged against him. The government responds that it intends to introduce evidence that defendant was the leader of a drug trafficking organization that operated out of an Oklahoma prison, and it will be necessary to refer to his status as a prisoner and actions that occurred in and directed from the Oklahoma penitentiary. The indictment alleges that defendant was a prisoner in McAlester, Oklahoma, and the indictment contains detailed allegations as to defendant's alleged management and leadership of a drug trafficking organization from the prison. The government agrees that it will refrain from introducing evidence as to the crime committed by defendant, but defendant's status as prisoner in the custody of the state of Oklahoma is a relevant fact.

Defendant's Possession of a Cell Phone and Voice Authentication

Defendant argues that there is no evidence that he owned or possessed a cell phone, and he asks that no witness be permitted to "refer to any telephone number as being the telephone number of [defendant]." Dkt. # 107, at 2. The government concedes that it has no evidence that defendant was found in possession of a cell phone, but it intends to introduce evidence that defendant used a cell phone while he was incarcerated. Dkt. # 114, at 2. This evidence includes recordings of intercepted phone calls, and the government is prepared to introduce evidence that defendant was the person speaking on the phone. Id. at 3. Defendant may be correct that there is no evidence that

5

he has been found in possession of a cell phone, but the government may offer evidence tending to show that defendant used a cell phone in furtherance of the alleged conspiracy. This evidence may include testimony from persons familiar with defendant's voice who have a sufficient basis to identify defendant as the person on an intercepted phone call.

Evidence of Other Crimes or Wrongs

Defendant asks the Court to exclude evidence of other crimes or wrongs unless the government files a notice under Fed. R. Evid. 404(b). Dkt. # 107, at 3. However, he does not identify any specific prior conviction or bad act that he seeks to have excluded at trial, and the government states that it does not intend to introduce any Rule 404(b) evidence. Dkt. # 114, at 3. The government does intend to introduce evidence of several crimes committed in furtherance of the conspiracy, but this evidence would not fall under Rule 404(b) if the acts are intrinsic to the charged conspiracy. See United States v. Parker, 553 F.3d 1309, 1314 (10th Cir. 2009). Defendant may raise an objection at trial if he believes that certain evidence should be excluded under Rule 404(b), but the Court will not exclude undisclosed evidence of other crimes without knowing what specific evidence defendant is referencing.

Assault of Coconspirator

Defendant asks the Court to exclude evidence that he ordered the assault of an unindicted coconspirator. Dkt. # 107, at 3. He claims that the alleged assault was not related to the conspiracy charged in count one of the indictment, and the evidence should be excluded as irrelevant. The government responds that the alleged assault was ordered by defendant to dispose of a cellular phone that contained evidence of the drug trafficking organization's activities, and the assault was committed in furtherance of the conspiracy. Dkt. # 114, at 3. Defendant may renew his objection

to the admissibility of this evidence at trial, but the Court will not exclude evidence of the alleged assault ordered by defendant.

Communications between Defendant and Zumwalt

Defendant claims that Zumwalt is his common law wife, and he asks the Court to exclude evidence of communications between Zumwalt and defendant under the spousal privilege. Dkt. # 107, at 3. However, he offers no support for his statement that he is married to Zumwalt, and the existence of a valid marriage is required in order to invoke the spousal privilege. United States v. Jarvison, 409 F.3d 1221, 1231 (10th Cir. 2005) (common law marriage can support the invocation of the spousal privilege). The government contends that defendant does not have a common law marriage with Zumwalt. They have never lived together and Zumwalt has two children with a different person. Dkt. # 114, at 4. The government argues that Zumwalt does not hold herself out as defendant's wife, that cohabitation is impossible due to defendant's incarceration, and that defendant cannot establish a common law marriage by clear and convincing evidence as required by Oklahoma law. Id. at 4-5. The Court finds that defendant's request to preliminarily exclude evidence of communications between himself and Zumwalt should be denied, because he has not shown that he is actually married to Zumwalt and there is no basis for him to invoke the spousal privilege. Defendant may renew this argument at trial if he has evidence supporting the existence of a common law marriage.

Evidence of Crimes Committed by Unindicted Coconspirators

Defendant claims that the "discovery in this case suggests that various alleged and unidentified co-conspirators committed a variety of uncharged offenses," and he argues that he will be prejudiced at trial if the government attempts to show that these person acted in concert with

7

defendant. Dkt. # 107, at 4. Defendant does not identify any specific act or offense that he seeks to have excluded, and the Court will not exclude an entire category of evidence based only on defendant's vague description. Defendant may object at trial to specific evidence of uncharged offenses or acts committed by unindicted co-conspirators, but he has not adequately identified the evidence to be excluded for the purpose of a pretrial motion in limine.

C.

Defendant asks the Court to exclude all evidence derived from a pen register that was authorized by the Oklahoma County District Court, because the application for the pen register did not establish probable cause under the Fourth Amendment and the application was granted in violation of Oklahoma law. The government responds that it does not intend to use any evidence obtained as a result of the pen register but, even if it did, there would be no basis under federal or state law to suppress the evidence. Dkt.. # 115, at 2.

On December 16, 2015, Ageny Jimmy D. Ward of the Oklahoma Bureau of Narcotics and Dangerous Drugs Control filed an application for authorization to use a pen register or trap and trace data on the phone number 918-541-8885. Dkt. # 105-1, at 1. Id. at 1. The application states that the phone number is for a cell phone utilized by Slint Tate.[1] Ward states that he received a tip from a confidential informant (CI) that Tate was operating a large-scale drug trafficking organization in Ottawa and Delaware Counties, and that Tate was then incarcerated in a state prison in McAlester, Oklahoma. Id. at 2. Ward was seeking a pen register to identify phone numbers that called the cell phone or that were called from the cell phone, and Ward was also seeking information from the

---

[1] Defendant notes that the application in one instance identifies "Cody McClendon" as the person using the phone. Id. at 4. This appears to be scrivener's error and the application identifies Tate as the user of the phone in every other instance.

8

phone provider to assist in locating the phone utilized by Tate.[2] Id. at 4. However, he was not seeking a wiretap that would intercept the content of calls or text messages to the phone. Id. at 3. The application identified 18 U.S.C. § 2703 and Okla. Stat. tit. 13, § 177.1 et seq., as the legal basis for the request pen register.[3]

The Court accepts the government's representation that it will not rely on the pen register data, but it will briefly consider defendant's argument that the evidence should be suppressed. A pen register is a device installed at a phone company's offices to record the phone numbers dialed from a particular phone number. California v. Rooney, 483 U.S. 307, 323 (1987). In contrast, a trap and trace device uses electronic information to determine the phone number for an incoming call. United States v. Banks, 2016 WL 1629394, *1 n.3 (W.D. Okla. Aug. 22, 2016). The Supreme Court has clearly held that the use of a pen register is not a search under the Fourth Amendment, because a person has no reasonable expectation of privacy in dialed telephone numbers. Smith v. Maryland, 442 U.S 735 (1979). The Tenth Circuit has extended Smith to trap and trace devices, and has found that the use of a trap and trace device is not a search under the Fourth Amendment. United States

---

[2] The application does seek information about the real-time location of the cell phone, and this appears to be separate from the use of a pen register or trap and trace device. However, defendant has not made any specific argument as to the admissibility of the cell phone service location information, and it is an open question as to whether this would even constitute a search under the Fourth Amendment. See United States v. Thompson, 866 F.3d 1149 (10th Cir. 2017) (person has no reasonable expectation of privacy in historical cell service location information). The parties have not briefed the issue of whether a court order allowing law enforcement officials to obtain real-time cell service location information would constitute a search, and the Court declines to reach this issue.

[3] In his reply, defendant cites the Oklahoma Security of Communications Act, OKLA. STAT. TIT. 13, § 176.1 et seq. (OSCA), as the statutory scheme that authorizes the suppression of evidence. Dkt. # 116. However, the OSCA applies to applications for a wiretap to intercept oral or electronic communications, and this is a separate statutory scheme from the statutes authorizing law enforcement officials to use a pen register.

v. Hallmark, 911 F.2d 399, 402 (10th Cir. 1990). There is a federal statute authorizing the use of a pen register but, unlike the wiretap statute, the pen register statute does not permit a court suppress evidence obtained from an illegal pen register. United States v. Roybal, 46 F. Supp. F.3d 1127, 1160 (D.N.M. 2014). The Court finds that defendant has no basis to challenge the admissibility of the pen register data under federal law, because the use of a pen register or trap and trace device is not a search under the Fourth Amendment.

Defendant argues that the application for a pen register or trap and trace device was deficient under Oklahoma law, and he claims that this is a separate basis to suppress evidence. The Tenth Circuit has clearly explained that state law is ordinarily not relevant to the reasonableness analysis under the Fourth Amendment, and state law is "'highly determinative' only when the constitutional test requires an examination of the relevant state law or interests." United States v. Gonzales, 535 F.3d 1174, 1184 (10th Cir. 2008). Defendant has made no attempt to show that the application of the Fourth Amendment requires an analysis of a significant state interest, and it does not appear that the Court could suppress evidence based solely on a violation of state law. The Court also notes that the Tenth Circuit has recently issued a decision that suppression is not a remedy for a violation of the OSCA. United States v. Banks, ___ F.3d ___, 2018 WL 1178412 (10th Cir. Mar. 6, 2018) (noting that suppression was not a remedy for alleged violations of the OSCA and Oklahoma law for an allegedly unlawful ping order). The Court finds that defendant's motion to suppress evidence derived from the pen register is moot, but it is unlikely that he would have a valid basis to challenge the admission of this evidence.

**IT IS THEREFORE ORDERED** that Defendant Slint Tate's Motion to Suppress Evidence Derived from Pen Register (Dkt. # 106) is **moot**.

**IT IS FURTHER ORDERED** that Defendant Slint Tate's Motion for Disclosure of Co-Conspirator Statements (Dkt. # 109) and Defendant Slint Tate's Motion for James Hearing (Dkt. # 110) are **denied**.

**IT IS FURTHER ORDERED** that Defendant Slint Tate's Motion in Limine (Dkt. # 107) is **granted in part** and **denied in part**: the motion is **granted** as to his request to exclude evidence of the conviction for which he is currently incarcerated by the State of Oklahoma, and the motion is **denied** in all other respects.

**DATED** this 9th day of March, 2018.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE